AMERICAN NAT. BANK OF NASHVILLE *v.* GUARDIAN LIFE INS. CO. OF AMERICA *et al.*\*

THIRD NAT. BANK IN NASHVILLE *v.* SAME.

*(Nashville,* December Term, 1937.)

Opinion filed Feb. 12, 1938.

\*For similar case see Louisville & N. R. Co. v. Ragan, p. 593, **infra.**

Bass, Berry & Sims, of Nashville, for American Nat. Bank.

E. J. Walsh and W. Howard Ewing, both of Nashville, for Third Nat. Bank.

Manier & Crouch, of Nashville, for Guardian Life Ins. Co. of America.

Mr. Justice McKinney delivered the opinion of the Court.

These two causes were consolidated for hearing in the chancery court and in this court. They involve the same questions, namely, the propriety of enjoining the prosecution of numerous suits at law instituted in the city of New York. These suits were instituted by the insurance company against its depository banks upon which it had drawn checks payable to various policy-holders in the Nashville territory, upon the theory that the names of the respective payees were forged. These checks were cashed by the complainant banks who will be ultimately liable if the insurance company has lawful claims against the several banks who either cashed or guaranteed the indorsements on said checks. Four suits have been instituted on checks that were cashed by the American National Bank, there being thirty or forty of such checks. The bill alleges that the insurance company has made demand upon it for the payment of said checks and has threatened to institute suit on each of said checks unless same are paid. Two suits have been instituted on checks cashed by the Third National Bank, one for $13.78 and the other for $20.89. The alleged forged indorsements on checks cashed by it number fifteen, and the aggregate amount thereof is about $4,500.

The bills were demurred to on several grounds, but were overruled by the chancellor and a discretionary appeal granted.

The Guardian Life Insurance Company of America is a New York corporation engaged in the general life insurance business. For many years it has been domesticated in this state. Up until about 1932, R. D. S. Robertson was its general agent in Tennessee, with his office in Nashville. Ladye Bearden was employed by the

insurance company as cashier in its Nashville office until 1932, when it was discovered that she was short in her accounts, which shortage was made good by the surety on her bond, and she was discharged. The insurance company thereupon changed its general agency to Memphis, but continued Robertson as its district manager at Nashville. Robertson employed Ladye Bearden as his assistant. Robertson wrote insurance, collected premiums and loans for the company, which funds he placed to his individual credit, and maintained no separate account in the name of the insurance company. Robertson also executed a power of attorney to Ladye Bearden by which she was authorized to indorse his name on checks so as to enable her either to cash or deposit them. For years Robertson had maintained checking accounts with both complainant banks.

In 1936, Ladye Bearden secured over $8,000 by forging the names of payees on checks issued by the insurance company to its policyholders. She was prosecuted by the insurance company and is now serving a term in the state penitentiary. Her method of procedure was as follows: She would forge the name of a policyholder to an application for a loan, and upon receipt of a check would forge the name of the payee, then indorse it, "R. D. S. Robertson by Ladye Bearden." Sometimes she would cash the check, and on some occasions she would place the proceeds of the check to the credit of Robertson. It is also averred that in some instances when a check on a *bona fide* loan was received or a dividend check she would forge the name of the payee as indicated above, but would issue a check or exchange on another bank to the payee for a part of the loan or dividend.

It is charged that the insurance company's negligence

was such as to preclude a recovery. This is based upon the fact that the insurance company had the genuine signature of its policyholders and by the exercise of reasonable diligence could have ascertained that numerous of these applications for loans were forged; that with knowledge of the employment of Ladye Bearden by Robertson after her embezzlement, and her handling of the checks mailed to Robertson, the insurance company was guilty of negligence in not notifying the banks of her former peculations.

It is also charged that the proceeds of a number of these checks were credited to Robertson's account, and a part thereof remitted to the insurance company.

It is averred that complainants would be very much embarrassed in having to intervene in the various suits already instituted in New York, as well as in those to be brought, and to interpose its defenses in each of said suits when all questions at issue could be decreed in this consolidated cause. That such a procedure would obviate a circuity of action, and would minimize the costs and expense that such a number of suits would entail. That an accounting is necessary to ascertain:

1. Which of the indorsements on said checks are forged.

2. What sums were actually paid to the respective policyholders.

3. What portion of the proceeds deposited to the credit of Robertson were remitted to the insurance company.

It seems to us that it would be exceedingly difficult to determine these matters without an accounting. We are further of the opinion that it would work a great hardship on complainants to have to intervene in these nu-

merous suits and go into these complicated matters, and would result in so much costs and expense as to make the advisability of interposing any defense questionable.

Upon the question of forgery, it appears that all of the witnesses are within this jurisdiction. Robertson and Ladye Bearden reside in this city. Since Robertson, by his attorney in fact, indorsed those checks, the complainant banks insist that if any recovery is had against them, that they are entitled to a decree over against Robertson, who is made a defendant to each bill. That they could not obtain such relief in New York.

The question of comity between states is not involved, this being simply an action *in personam*. It is conceded that the chancery court of Davidson county has jurisdiction of both the parties and the subject-matter. These causes are no different from one where it is sought to enjoin the prosecution of a suit at law in one of the courts of Tennessee. The question is, Do the facts, as alleged, come within that class of cases where a court of chancery will assume jurisdiction? We think they do upon the following grounds:

1. To prevent a multiplicity of suits.

2. To prevent irreparable injury.

3. To prevent circuity of action.

4. To prevent the insurance company from vexing complainants.

5. Because the issues involve or necessitate an accounting.

6. Because the defense is hampered by difficulties, complications, or embarrassments.

7. Because all matters in controversy can be more conveniently, economically, equitably, and satisfactorily settled in this consolidated cause.

8. To enable complainants to recover over against defendant R. D. S. Robertson, if they are liable to the insurance company, without having to institute separate suits against him, which would result in delay and additional expense.

The foregoing practice is in harmony with the authorities. Gibson's Suits in Chancery, Chambliss Ed., section 814.

We are not unmindful of the fact that the complainants are not parties to the New York suits. But they have been notified to defend same, and unless they do so, and judgments are rendered against the drawee banks, complainants when sued will likely be precluded from interposing the defenses upon which they are relying. They are the parties who will ultimately have to pay such judgments as the insurance company may recover.

██ As a general rule, a court of equity will not enjoin the prosecution of a suit at law without requiring the complainant to confess judgment at law, which cannot be done in these causes since complainants are not sued. The same result, however, can be accomplished by requiring complainants to amend their bills so as to agree specifically that the insurance company may prosecute an action against them upon the alleged forged indorsed checks by cross-bill in these causes, waiving any question as to the jurisdiction of the chancery court, and by further agreeing to execute bonds in such amounts as the chancellor may determine, conditioned to pay and satisfy such decrees as may be entered against them in these causes.

The decree of the chancellor is affirmed and the causes remanded, with direction to the chancellor to dismiss

the bills of complainants unless within· the time fixed by him the complainants comply with the foregoing .requirements. Complainants in their bills agreed· to abide by and perform the decrees of the court with regard to their liability to the insurance company, but some question has been raised as to whether such allegations are full enough; hence the requirement for more specific allegations.

The costs of the appeal will be paid by the insurance company; the costs in the chancery court to be decreed on final hearing.